GUILLERMINA NAVEDO VDA. DE GUERRERO, demandante y apelante, *v.* ISABEL AMATO DE BALASQUIDE, asistida de su esposo JOSÉ RAMÓN BALASQUIDE y éste personalmente, y JOSÉ JACINTO LÓPEZ, demandados y apelados.

Núm. 9748.—*Sometido:* Febrero 8, 1949. *Resuelto:* Diciembre 13, 1949.

*Carlos D. Vázquez,* abogado de la apelante; *Juan Enrique Géigel* y *Guillermo Silva,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

Ante el Tribunal del Distrito Judicial de San Juan, Guillermina Navedo vda. de Guerrero demandó a Isabel Amato de Balasquide, asistida de su esposo José Ramón Balasquide, a éste personalmente y a José Jacinto López para recobrar

la posesión de la planta alta de una casa en la Avenida Fernández Juncos de Santurce, alegando que el 27 de marzo de 1947 dichos demandados violentamente arrebataron a la demandante la posesión material de dicha planta alta, cambiando las cerraduras de las puertas e introduciéndose en la misma subrepticiamente y contra la voluntad expresada por la demandante a través de uno de sus hijos, despojándola desde entonces de la posesión de dicha planta alta en la referida casa. Los codemandados Isabel Amato de Balasquide y Jacinto López contestaron la demanda negando específicamente que la demandante hubiese estado en fecha o momento alguno en posesión material de la planta alta de la casa descrita en la demanda, y negando igualmente haber arrebatado la posesión de dicha planta alta a la demandante.

Luego de un juicio en sus méritos, la corte inferior declaró sin lugar la demanda. No conforme, apeló la demandante y en su alegato imputa error a la corte inferior en la apreciación de la prueba y en la aplicación del derecho al resolver que la demandante no demostró que ella estuviera en la posesión material y física de la propiedad objeto del *injunction*.

Los hechos que declaró probados la corte inferior y sobre los cuales, conforme indican ambas partes en sus respectivos alegatos, no existe controversia, son los siguientes, según aparece de la propia sentencia apelada:

"Se trata de un matrimonio que adquiere una casa de dos plantas en la Avenida Fernández Juncos de Santurce, Puerto Rico; originalmente la esposa cobraba los cánones de alquiler de ambas plantas; después el inquilino de la planta alta, llamado Juan Miranda, tuvo un disgusto con la esposa del demandado y decidió pagarle la casa directamente al marido. El matrimonio se separó y la esposa acudió a la corte de distrito para que declarara a su esposo incapaz por tratarse de un ebrio habitual. La Corte de Distrito de San Juan nombró tutora a la esposa, pero el esposo apeló y el caso aún se encuentra pendiente en apelación.

"El 25 de marzo de 1947, Juan Miranda desocupó la planta alta de la casa. Aparentemente no pasa nada ese día 25 de marzo de 1947.

"El 26 de marzo de 1947 de ocho y media a nueve de la mañana, el marido le arrendó la casa a la peticionaria, a través de un hijo de ella nombrado Octavio Guerrero. El hijo de la peticionaria le entregó un cheque en pago del primer mes en esa misma, fecha, de 26 de marzo de 1947 y el esposo de la demandada le entregó las llaves de la casa. La casa iba a, ser ocupada por la peticionaria, por un hijo de ésta nombrado José Efraín Guerrero quien pensaba contraer matrimonio con la señorita Emilia García, para residir los tres, la peticionaria, su hijo y su esposa en dicha planta alta. Ese mismo día 26 de marzo por la tarde, el hijo de la, peticionaria, don José Efraín Guerrero, hace algunas diligencias en la ciudad, tales como solicitar servicio de gas, y hacer el depósito correspondiente y obtener la transferencia de la luz eléctrica. Después de hacer estas diligencias en la ciudad el señor José Efraín Guerrero se encontró con su prometida la señorita Emilia García, fueron a casa del señor Octavio Guerrero a buscar las llaves y entonces fueron a ver la casa alquilada, el señor José Efraín Guerrero, su prometida la señorita Emilia García y la cuñada del señor Guerrero. La señorita, Emilia García, quien es la que declara con más detalles, dice que llegarían a la, parada 22, donde está situada la casa, como a las cinco y veinte minutos de la tarde, que entonces fueron a casa del hermano de José Efraín Guerrero a buscar las llaves y entonces se dirigieron a la planta alta, donde permanecieron el señor Guerrero, ella y la cuñada del señor Guerrero como una, hora u hora y cuarto; que llevaron algunas escobas, cepillos y un escobillón con idea de hacer la limpieza de la planta, al día siguiente. Que lo único que hicieron aquella tarde fué recoger unos magazines y unos periódicos que estaban por los *closets* y los cuartos y los reunieron todos en el último cuarto. Cerraron la casa con las mismas llaves y se fueron. De manera pues, que durante el día 26 de marzo de 1947, la posible posesión de la peticionaria de dicha planta alta fué por una hora u hora y cuarto.

"Al otro día, 27 de marzo de 1947, la esposa demandada visitó en su casa al señor Guerrero, acompañada de su sobrino político José Jacinto López y le requirió al señor Guerrero la entrega de las llaves que le había dejado su esposo el señor Balasquide. El señor Guerrero rehusó entregarle las llaves a la esposa demandada, doña Isabel Amato de Balasquide. Entonces la señora Balasquide se dirigió a la casa, como a las siete o siete y media de la mañana y procedió a cambiarle la cerradura a la planta alta. Como a las nueve y media o diez de la mañana el señor José Efraín Guerrero acompañado por un hombre que iba a hacer la limpieza, se dirigió a la planta alta y al tratar de abrir ésta se encontró con que la llave no funcio-

naba dentro de la cerradura. Entonces penetró en la planta alta por un ventanillo de la cocina y se encontró con que alguien había ya mudado unos muebles que estaban envueltos en periódicos dentro de la sala de la casa. Mientras tanto llegó el *truck* de la mudanza del señor Guerrero, pero en vista de que la casa estaba ocupada por otros muebles decidió enviar la mudanza para su casa otra vez.''

La corte inferior consideró la visita del hijo de la demandante, su prometida y su cuñada a la casa alquilada, ''más bien como una inspección de la propiedad arrendada que como un acto de tomar posesión física y corporal del inmueble'' y entendió que, por la naturaleza de la acción ejercitada, no habiéndose realizado *ulterior acto de posesión* de la casa, la demandante nunca tuvo dicha posesión y no procedía el injunction. No estamos conformes. Si los hechos hubieran revelado tan sólo la existencia del contrato de arrendamiento y la entrega de las llaves por el arrendador a la arrendataria, no habría dudas de que por la naturaleza de la acción, y siguiendo la doctrina aplicable a estos casos,(¹) el injunction no podía prosperar. Pero en este caso hubo más que la mera entrega simbólica de la propiedad arrendada. La visita del hijo de la demandante, unida a los actos por él allí realizados, constituye acto suficiente de posesión para que se considere a aquélla *poseedora* a los fines de invocar la protección de la ley—artículo 375 del Código Civil, ed. 1930 (²)—mediante el ejercicio de la acción de injunction para recobrar. La demandante, a través de su hijo, hizo uso de las llaves para

---

(¹) En recursos de esta naturaleza se discute tan sólo el hecho de la posesión, mas nunca el derecho a tal posesión, ni el título o dominio al inmueble objeto del recurso. *Martorell* v. *Municipio de Dorado*, ante, pág. 380; *Rivera* v. *Cancel*, 68 D.P.R. 365, 369; *Pérez* v. *Castro*, 52 D.P.R. 573, 576; *Solís Vda. Alonso* v. *Esquilín*, 48 D.P.R. 605; *Pérez* v. *Marrero*, 47 D.P.R. 456; *Rivera* v. *Vargas*, 43 D.P.R. 151; *Vicente* v. *Ortiz, Comisionado*, 38 D.P.R. 106; *Pérez* v. *Pérez*, 38 D.P.R. 753; *Vázquez* v. *Rivera*, 37 D.P.R. 804; *Oliver Cuveljé* v. *González*, 37 D.P.R. 936; *Solís* v. *Castro*, 36 D.P.R. 105; *González* v. *Rivera*, 31 D.P.R. 306.

(²) Dicho artículo prescribe: ''Todo poseedor tiene derecho a ser respetado en su posesión; si fuere inquietado en ella, deberá ser amparado o restituído en dicha posesión por los medios que las leyes de procedimientos establecen.''

entrar a la casa; disfrutó de la misma por más de una hora realizando una limpieza inicial al recoger periódicos y revistas que estaban dispersos en los closets y los cuartos, amontonándolos en el último de los cuartos y situó en la casa objetos tales como escobas, cepillos y un escobillón, que habría de seguir usando posteriormente. Al salir, cerró la casa con las mismas llaves. Todo esto ocurre inmediatamente después de haber el hijo de la demandante—quien juntamente con ésta habría de habitar la propiedad—hecho las gestiones necesarias para la instalación en dicha casa del servicio de gas flúido y luz eléctrica.

Bajo tales circunstancias, no era necesario, a nuestro juicio, ningún acto ulterior de posesión para convertir a la demandante en *poseedora,* con derecho a ejercitar el interdicto. La propia corte inferior expresó en su sentencia "una fuerte duda sobre la procedencia del recurso en un caso como éste", y califica la visita del hijo de la demandante a la propiedad arrendada—y que consideró finalmente como una inspección —como "el único acto posesorio de alguna importancia".

■ Pudiendo ser ejercitado el interdicto por actos de perturbación o despojo, por el poseedor, aun contra el propio dueño, IV Manresa, Comentarios al Código Civil Español, 5ta. ed., pág. 194; Revista General de Legislación y Jurisprudencia, publicada por "Instituto Editorial Reus", Madrid, núm. 6, junio, 1946, "La Posesión de las Cosas Arrendadas", por Rafael Gimeno Gamarra, pág. 671 y siguientes; VI Manresa, Comentarios a la Ley de Enjuiciamiento Civil, 3ra. ed., págs. 148-49, la demandante tiene derecho a ser reintegrada en la posesión de la que fué privada por los demandados.

*Debe revocarse la sentencia y dictarse otra declarando con lugar la demanda, imponiendo las costas a los demandados.*