TEXACO PUERTO RICO, INC., demandante y recurrente, *v.* JUAN GONZÁLEZ RODRÍGUEZ y/o YUYO GONZÁLEZ, INC., demandados y recurridos.

*Número:* R-64-87 *Resuelto:* 26 de junio de 1968

*Beverley, Rodríguez & Reichard,* abogados de la recurrente; *Carlos E. Colón,* abogado de los recurridos.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Dávila y Torres Rigual.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

(1) Por escritura de 14 de agosto de 1957 otorgada ante el Notario Rafael Rodríguez Lebrón, Rafael Fabián Soto y su esposa Irma Mariani Peralta dieron en arrendamiento a la recurrente Texaco Puerto Rico, Inc., un inmueble compuesto de un solar de 2000 metros cuadrados sito en la carretera Núm. 10 de Arecibo a Utuado y una edificación de hormigón y bloques sobre el solar. En este inmueble, solar y edificación, los arrendadores y dueños de la propiedad tenían establecido y en operación un negocio de estación de servicio de gasolina. El arrendamiento se hizo por un término de 10 años y cubrió expresamente el negocio de gasolina en operación que se explotaba en el inmueble arrendado, incluyendo las estructuras y equipo destinado a dicho negocio.

Como pacto especial se convino que la Texaco podría instalar, fijar o enterrar en la propiedad arrendada toda clase de equipo, dispositivos, herramientas, aparatos, y cualquier otro objeto tales como bombas, tanques, elevadores hidráulicos, compresores, postes anunciadores, rampas y estantes.

Tales objetos no se entendían incorporados a la propiedad arrendada y podrían ser removidos por la arrendataria sin obligación por parte de ésta de pagar suma alguna. La arrendataria se reservó el derecho de subarrendar o de ceder el contrato de arrendamiento y se pactó que las condiciones de dicho contrato serían obligatorias para las partes y para sus sucesores y cesionarios. Se convino que el arrendamiento podría ser inscrito en el Registro de la Propiedad y efectivamente, quedó inscrito en el Registro de la Propiedad de Utuado en 30 de septiembre de 1957, sujeta la propiedad a hipoteca ya existente por la suma de $5,000 de capital a favor de la arrendataria Texaco. El canon de arrendamiento fue de $50 mensuales.

(2) En la misma fecha, 14 de agosto de 1957, arrendadores y arrendataria suscribieron un contrato ante el propio Notario Rafael Rodríguez Lebrón, en virtud del cual la arrendataria Texaco subarrendaba idéntica propiedad a los arrendadores esposos Fabián Mariani. Este subarrendamiento se hizo por el término de 9 años 11 meses y por un canon de $50 mensuales. Se convino por el subarrendatario que toda la maquinaria y equipo ubicado en la propiedad perteneciente a la subarrendadora Texaco y los que se instalaren en el futuro serían de la exclusiva propiedad de ésta. Se obligó el subarrendatario a usar esa propiedad y equipo para la operación de un negocio de servicio y venta de gasolina, piezas y accesorios, lavado y engrase de automóviles, comprometiéndose a vender en la referida estación de gasolina preferentemente los productos de petróleo distribuidos por la Texaco. Se comprometió igualmente a conservar instalados en la estación de gasolina los anuncios de los productos de la Texaco y a permitir que ésta instalara en dicho inmueble todo anuncio o rótulo a tal efecto. La Texaco se reservó el derecho de inspeccionar la estación de servicio para mejorar la apariencia de la misma y el servicio prestado.

(3) La propiedad arrendada a la Texaco pasó posteriormente a varios dueños y finalmente vino a pertenecer a Miguel Torres Frau y su esposa María E. Maldonado, quienes la adquirieron en el año 1962.

(4) Por escritura Núm. 1 de 24 de enero de 1963, ante el Notario Carlos E. Colón, los esposos Torres Frau y Maldonado dieron la referida propiedad en arrendamiento a Yuyo González, Inc., incluyendo el negocio de venta de gasolina en funcionamiento que los dueños y arrendadores explotaban en el inmueble, con todos sus usos, accesorios, estructuras y equipos destinados al referido negocio.

(5) Demuestra el récord, y así concluyó la Sala sentenciadora, que las personas que adquirieron la propiedad con posterioridad al dueño y arrendador original Fabián Soto, siguieron operando el negocio de estación de gasolina en los términos del contrato privado de 14 de agosto de 1957 por Texaco y Fabián Soto, coetáneamente con la escritura de arrendamiento.

(6) Antes de otorgarse la anterior escritura de arrendamiento entre los actuales dueños Torres Frau y Yuyo González, Inc., Torres Frau solicitó permiso de la Texaco por carta de 26 de noviembre de 1962, para subarrendar la estación de gasolina a Yuyo González, Inc., en las mismas condiciones del contrato de subarrendamiento con la Texaco. La Texaco contestó en comunicación de igual fecha que no tenía inconveniente en dicha transacción siempre y cuando que González, Inc., estuviera dispuesto a cumplir con las cláusulas de su contrato de subarrendamiento con esa Compañía. Esta condición a ser cumplida por el arrendatario y subarrendatario González, Inc., no se menciona en la escritura de arrendamiento a González.

(7) En 3 de mayo de 1963 González, Inc., si dirigió a Texaco notificándole que era su intención descontinuar la compra de gasolina de la Texaco por motivos que expuso y

solicitó que procedieran a remover dentro de un plazo razonable las bombas de venta de gasolina allí ubicadas propiedad de Texaco. La discrepancia surgió aparentemente por razón de ciertos cambios en el inmueble que González exigía que se hicieran con cargo a Texaco y que Texaco rechazó. En dicha comunicación de 3 de mayo de 1963 se advierte a Texaco que de no remover las bombas al expirar un término de 10 días, González, Inc., las removería por cuenta y costo de aquélla. El 8 de ese mes de mayo Texaco interpuso la presente demanda de *injunction* posesorio.

La Sala sentenciadora declaró sin lugar la demanda. Rechazó, correctamente, la contención de la demandada-recurrida al efecto de que los contratos de arrendamiento y de subarrendamiento de 14 de agosto de 1957 eran contratos simulados. A la luz de los pactos y convenciones de dichos contratos y considerando el objeto de los mismos, no eran tales contratos simulados ya que, como bien apunta la Sala, no contenían una declaración deliberadamente disconforme con la intención de las partes, concertada entre las partes, y con el fin de engañar a otros.

Declarando sin lugar la demanda se expresó así la Sala en cuanto a sus razones de derecho:

"En nuestro derecho un arrendatario puede ejercitar el recurso de injunction posesorio pero ello presume que es poseedor material de la cosa, o sea, que tiene la posesión inmediata. La posesión mediata o directa [(1)] es la del propietario y posiblemente la del arrendatario con relación al subarrendatario quienes, aunque no posean materialmente la cosa no pierden la posesión de su derecho.

Entendemos que sería estirar demasiado el complejo concepto de la posesión si concluyéramos que tenemos ante nos un caso de posesión mediata [(1)] protegida por el presente recurso de injunction posesorio.

No cabe duda que la demandante tiene en nuestras leyes remedios que protegen los derechos que, como propietario, tiene

_____

(1) Así aparece en el original.

en cuanto al equipo instalado en el inmueble y, como arrendatario, con relación al subarrendamiento pero en el injunction posesorio se discute el hecho de la posesión inmediata o material y no la posesión mediata que, como queda dicho, está protegida por otras acciones.

Un poseedor superior (posesión mediata) reconoce la tenencia en otra persona y los actos que contempla el artículo 690, Enjuiciamiento Civil (32 L.P.R.A. sec. 356 [*sic*]) son manifestaciones intencionales de inquietar o despojar al tenedor de la cosa que la posee materialmente."

Son supuestos de derecho en este caso:

(a) El Art. 360 del Código Civil, ed. 1930: "Posesión natural es *la tenencia* de una cosa o *el disfrute de un derecho* por una persona. Posesión civil es esa *misma tenencia o disfrute*, unidos a la intención de haber la cosa o derecho como suyos";

(b) "La posesión de los bienes y derechos puede tenerse en uno de dos aspectos: o en el de dueño, o en el de tenedor de las cosas o derechos para conservarlos o disfrutarlos, perteneciendo el dominio a otra persona." Art. 362;

(c) ". . . El que se crea con acción o derecho para privar a otro de *la tenencia* de una cosa, siempre que el tenedor resista la entrega, deberá solicitar el auxilio de la autoridad competente." Código Civil Art. 370;

(d) La posesión como *hecho,* no puede reconocerse en dos personalidades distintas, fuera de los casos de indivisión." Art. 374;

(e) "Todo poseedor tiene derecho a ser respetado en su posesión; si fuere inquietado en ella, deberá ser amparado o restituido en dicha posesión por los medios que las *leyes de procedimientos* establecen." Art. 375.

En relación con los Arts. 370 y 375 del Código Civil, se aplica el 690 del Código de Enjuiciamiento Civil, ed. 1933:

(f) "Se concederá un *injunction* para retener o recobrar la posesión material de propiedad inmueble, a instancia de parte interesada, siempre que ésta demuestre, a satisfacción

de la corte, que ha sido perturbada en la posesión o tenencia de dicha propiedad, por actos que manifiesten la intención de inquietarle o despojarle, o cuando haya sido ya despojada de dicha posesión o tenencia."

Son también supuestos de ley aplicables:

(g) El Art. 1439 del Código Civil: "Con relación a terceros, no surtirán efecto los arrendamientos de bienes raíces que no se hallen debidamente inscritos en el registro de la propiedad;" el Art. 1444: "El arrendador está obligado: . . . 3. A mantener al arrendatario en el goce pacífico del arrendamiento por todo el tiempo del contrato;" el Art. 1450: "El arrendador no está obligado a responder de la perturbación de mero hecho que un tercero causare en el uso de la finca arrendada; pero el arrendatario tendrá acción directa contra el perturbador;" el Art. 1461: "El comprador de una finca arrendada tiene derecho a que termine el arriendo vigente al verificarse la venta, salvo pacto en contrario y lo dispuesto en la Ley Hipotecaria;" y el Art. 1472: "Cuando el arrendador de una casa . . . tienda . . . o establecimiento industrial arrienda también los muebles, el arrendamiento de éstos se entenderá por el tiempo que dure el de la finca arrendada."

Igualmente se aplica en este caso:

(h) En relación con el Art. 2-5° de la Ley Hipotecaria, (Contrato de arrendamiento), el Art. 23 de la misma: "Los títulos mencionados en los Arts. 2 y 5 que no estén debidamente inscritos o anotados en el Registro no podrán perjudicar a tercero."

Según nuestro Art. 360 del Código Civil, la *tenencia* de la cosa o el *disfrute* del derecho es elemento común presente tanto en el orden de la posesión natural como en el orden de la posesión civil. [2]

---

[2] Las Partidas, observa Castán hablando sobre posesión consideraban la posesión de un derecho o cosa incorpórea—en nuestro caso, de-

· ·. .Nuestro ordenamiento civil no legisla los conceptos de posesión "mediata o superior indirecta, y posesión inmediata o·directa." Son éstos, conceptos descriptivos de la posesión, de autores y comentaristas que recogen la doctrina germánica, pero que hallan lugar, no obstante, en nuestro régimen de posesión. Así, por ejemplo, el dueño o propietario quien, conforme al Art. 360 disfruta de la posesión civil superior, ostenta, frente a su arrendatario o usufructuario, la posesión mediata indirecta y, éstos, frente al dueño, la posesión inferior o subposesión directa o inmediata. El arrendatario tiene la posesión superior mediata indirecta frente a su subarrendatario, quien ostenta la inmediata o directa inferior, y así por el estilo.

. .: El Art. 690 del Código de Enjuiciamiento Civil, antes transcrito, tampoco legisla los términos del poseedor mediato e indirecto y del poseedor inmediato. Concede el remedio para retener o recobrar la posesión material de un inmueble, *a instancia de parte interesada,* si demuestra que ha sido perturbada en la posesión o tenencia de la propiedad por actos que manifiesten la intención de *inquietarle o despojarle,* o si ya ha sido despojada. El Art. 691 que le sigue exige alegar que dentro del año precedente, el demandante estaba en la *posesión real* de la propiedad si para recobrarla, y está, si para retenerla.

■ Incuestionablemente esta acción interdictal de la Ley de Enjuiciamiento da efectividad a la tutela posesoria que declara el Art. 375 del Código Civil.

Nuestro Código Civil hace permisible la posesión en distintos conceptos—Art. 362—como *tenedor* de la cosa para

recho de arrendamiento—como una *cuasi posesión* o "como manera de posesión", siguiendo el concepto romano. El Art. 360 nuestro, al igual que el 430 del Código Civil Español de su procedencia, fundió el concepto y no hizo distinción en la institución posesoria entre cosas corporales e incorporales. Eliminó toda diferencia histórica entre detentación y posesión natural, que sólo requiere el *corpus* o la *tenencia* corporal. Castán, *Derecho Civil Español, Común y Foral,* 9a. ed. 1957, Tomo 2º—La Posesión.

disfrutarla, y como dueño—la civil del Art. 360. Pueden concurrir ambos conceptos en la misma persona, como lo sería el propietario que no se ha desprendido de la posesión mediante arrendamiento, usufructo, o por cualquiera otro negocio jurídico, y hay casos en que concurran en otras personas distintas. De ahí que si bien el Art. 1444 impone al arrendador-dueño—la obligación de mantener al arrendatario-tenedor—en el goce de la propiedad, el 1450 no le impone responsabilidad por la perturbación de hecho de un tercero, pero el tenedor de la posesión o arrendatario tiene causa de acción contra el perturbador.

■ Lo que no permite nuestro orden civil es la posesión *de hecho* en dos personas distintas al mismo tiempo, excepto en el caso de indivisión. Art. 374. (³)

■ Situados los hechos probados ante los supuestos de derecho aplicables, la demandante-recurrente Texaco era un poseedor directo e inmediato frente al propietario Fabián Soto, en virtud del contrato de arrendamiento de 14 de agosto de 1957. Ocurrió, sin embargo, que por el convenio privado de subarrendamiento de igual fecha, la posesión inmediata directa revirtió al propietario para disfrutarla esta vez, no ya en su condición de dueño, sino en la de subarrendatario, sujeta esta subposesión a los pactos y cláusulas del contrato de arrendamiento.

(³) Observa Castán, op. cit., pág. 435:

"Nuestra más moderna doctrina suele dar entrada en nuestro Derecho a esta distinción. Cuando hay una persona que posee a título de tenedor de la cosa, reconociendo el dominio en otra persona, existen dos poseedores, ya que el propietario no pierde la posesión de su derecho de propiedad, aunque no posea materialmente la cosa; y en este sentido se puede considerar virtualmente admitida en nuestro ordenamiento jurídico la distinción (que el Código alemán claramente formula en su #868) entre un poseedor *inmediato o directo* (mediador posesorio) y otro poseedor *mediato o indirecto*. [Énfasis del autor.] La posesión mediata es una especie de señorío espiritualizado que no implica una tenencia material. La posesión inmediata no es más que una mera tenencia o posesión natural, *si bien protegida por los interdictos*." (Énfasis puesto.)

Igual situación se desarrolló con los posteriores adquirentes y dueños de la propiedad que mantuvieron con Texaco la relación de subarrendamiento convenida por el documento privado.

Habiéndose inscrito en el Registro el contrato de arrendamiento de Texaco éste, con sus pactos y cláusulas, tenía que ser respetado durante su vigencia de 10 años por todo posterior adquirente. Frente a Texaco, no altera la situación en forma alguna el contrato de arrendamiento que el último dueño Torres Frau realizó con la demandada-recurrida por escritura de 24 de enero de 1963, no siendo parte Texaco, en tanto Torres Frau pretendió, en virtud de este contrato de arrendamiento, transmitir la posesión material de la finca a la demandada. Frente a Torres Frau, en ausencia de la relación de subarrendamiento creada por el convenio privado, Texaco tenía la tenencia o posesión material directa e inmediata nacida de su contrato de arrendamiento inscrito, y Torres Frau como dueño no podía otorgarle la misma tenencia material a la recurrida, ni podemos reconocérsela, conforme a la prohibición que establece el Art. 374 del Código, antes citado.

■ En ausencia, entre Texaco y la recurrida González Inc., de la relación creada por el convenio privado—el récord no demuestra que la hubiera—todo acto de la recurrida intentando impedir la tenencia de la propiedad y su goce y disfrute por Texaco a tenor de los pactos y cláusulas del contrato de arrendamiento constituyen los actos de perturbación de un tercero, contra los cuales Texaco tiene una causa de acción conforme a la tutela posesoria del Art. 375 y conforme a lo dispuesto en el Art. 1450, antes citados. A partir del 14 de agosto de 1957 y a la fecha de la interposición de la demanda, Texaco nunca había dejado de estar en posesión del inmueble, bien en la inmediata o directa como arrendataria, o ya en la mediata o indirecta como subarrendadora en cuanto a la posesión de aquéllos a quienes subarrendó.

Fue pactado en el contrato de arrendamiento inscrito que Texaco disfrutaría de la posesión de la estación de gasolina con todos sus usos, accesorios, edificaciones y facilidades destinadas a dicho negocio, y fue especialmente pactado que Texaco podía colocar, instalar, fijar o enterrar en la propiedad arrendada toda clase de equipo, dispositivos, herramientas, aparatos o cualquier otro objeto, bombas, elevadores hidráulicos, compresores, postes anunciadores, etc., sin que la lista fuera limitativa y sin que tales artefactos se entendieran incorporados al inmueble arrendado. Los actos de perturbación por parte de la recurrida alegados, guardan relación con esos objetos, los cuales o parte de ellos la recurrida amenazó con sacar de la propiedad arrendada por Texaco.

El arrendatario puede ejercer la acción interdictal. Aun contra su arrendador y el propietario. Véanse: *Cepero* v. *Mora*, 42 D.P.R. 84 (1931); *Navedo* v. *Amato*, 70 D.P.R. 673 (1949); *Ferrer* v. *Gutiérrez*, 28 D.P.R. 460 (1920); *Fajardo Sugar etc.* v. *Cent. Pasto Viejo, Inc.*, 41 D.P.R. 825 (1931).

El dueño de la propiedad arrendada, quien tiene durante el arrendamiento la posesión civil superior pero sólo mediata e indirecta, puede ejercer la acción interdictal. *Serrano* v. *Sucesión Santos*, 24 D.P.R. 175 (1916).

 La acción interdictal está al alcance de todo poseedor.(4) Frente al último dueño Torres Frau, Texaco era

---

(4) Dice Castán, op. cit., pág. 456:

"En nuestro Código el sistema es distinto. Como el artículo 446, según acabamos de ver, [Art. 375 nuestro] concede protección *a todo poseedor*, y el art. 1.651 de la Ley procesal [Art. 690 de nuestro Cód. de Enj. Civil] habla de la *posesión* o la *tenencia*, hay que entender que son aplicables los interdictos tanto a una como a otra, y que pueden utilizarlos el poseedor a título de dueño, el simple ocupante o tenedor actual, el usufructuario, el prendario, el anticrecista, el que disfrute del derecho de retención, el arrendatario, el comodatario, el depositario, y, en una palabra, todo aquel que, empleando la técnica del Código Civil, tenga una posesión, sea ésta natural o civil, en concepto de dueño o en concepto

una poseedora inmediata y directa como arrendataria. En tanto éste pudo aceptar las cláusulas del subarrendamiento privado, ella era una poseedora mediata en cuanto a él. En cuanto a la demandada González, Inc., Texaco era una poseedora inmediata como arrendataria de la propiedad. Aun en el supuesto de que hubiera existido relación de subarrendamiento privado entre Texaco y González, como poseedora mediata Texaco podía defender también su posesión contra

---

distinto." (Énfasis del autor.)

Citando a García Valdecasas, sostiene con este último que "está legitimado para el ejercicio del interdicto no sólo el poseedor inmediato, sino también el poseedor mediato: si un tercero perturba o despoja al poseedor inmediato, mediador posesorio de otro, pueden ejercitar los interdictos tanto el poseedor inmediato como el mediato . . . . El poseedor inmediato está legitimado para ejercer el interdicto no sólo frente a extraños, sino también frente al poseedor mediato causante de la lesión. A su vez el poseedor mediato puede dirigir el interdicto contra el poseedor inmediato si éste lesiona su posesión." Pág. 458.

Don Juan B. Vallet de Goytisolo en su citado ensayo sobre *La Concurrencia de Varias Posesiones Sobre Una Misma Cosa Inmueble*, Revista General de Legislación y Jurisprudencia (1947), tomo .182, págs. 545 y sgs., sostiene que tanto el poseedor del derecho de propiedad como el tenedor de la cosa, para defenderse uno frente al otro de las inmisiones realizadas fuera de los límites de sus respectivas *posiciones de hecho*, disponen de los interdictos, y expone: "Hemos repetido muchas veces que conforme a nuestro Código civil refrendado por la jurisprudencia, no cabe duda que el que 'posee un derecho', aunque no 'tenga la cosa', debe ser protegido por los interdictos. Pues bien, el *possessor iure* tiene en nuestro Derecho, además—si se quiere decir así—de la llamada posesión mediata sobre la cosa, la posesión inmediata y de hecho del dominio de dicha cosa o de un derecho real superior en la misma (usufructo, enfiteusis) limitada por las demás posesiones de hecho sobre facultades aisladas de dicha cosa. Cierto que los interdictos protegen 'la posesión como hecho' y la 'perturbación momentánea', no importando cómo y por qué se posee. Y que, por eso mismo, respecto a la tenencia de la cosa, no amparan al *possessor iure* frente al *possessor facti*; pero en cambio, sí le protegen contra los mismos tenedores de la cosa para mantenerle 'en la posesión de hecho del derecho de propiedad' (o usufructo, o enfiteusis, en su caso). Así, el interdicto, no será suficiente para que el arrendador, por ejemplo, recupere la cosa arrendada de manos del arrendatario. *Pero sí bastará para impedir que éste derribe la casa que tiene alquilada, tale árboles o edifique sobre la huerta arrendada;* y para evitar que éste convierta su posesión como arrendatario en posesión en concepto de dueño." (Pág. 591)

actos de González que la lesionaran, como fueron las amenazas de sacar de la propiedad su equipo, ya que tenía derecho a defender la posesión del derecho a poseer otorgádole por su contrato original de arrendamiento.

A la luz de nuestras disposiciones de derecho positivo y de la doctrina aplicable, y habiéndose probado los actos amenazantes de perturbación de la demandada contra la posesión material de la demandante, la acción interdictal debió sostenerse.

*Se revocará la sentencia recurrida que declaró sin lugar la demanda por falta de razón en derecho para pedir, y probado el acto perturbador, se dictará otra declarándola con lugar. Se impondrá a la demandada recurrida el pago de $600 de honorarios de abogado ante el tribunal de instancia.*