Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| CARMEN M. NIEVES LAMOSO<br><br>Apelada<br><br>v.<br><br>ALBERTO TORRES CASTILLO Y OTROS<br><br>Apelantes | TA2025AP00099 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm. MZ2025CV00703<br><br>Sala: 307<br><br>Sobre: INJUNCTION (INTERDICTO POSESORIO) |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 20 de agosto de 2025.

Comparece ante nos el Sr. Alberto Torres Castillo (en adelante, señor Torres Castillo), la Sra. Kety Blanco Cornejo (en adelante, señora Blanco Cornejo) y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en conjunto, parte apelante) y nos solicitan que revisemos una *Sentencia* emitida el 9 de junio de 2025 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (en adelante, TPI).[1] Allí, el foro primario declaró *HA LUGAR* una demanda sobre interdicto posesorio presentada por la Sra. Carmen Nieves Lamoso (en adelante, señora Nieves Lamoso o parte apelada) en contra de la parte apelante.

Por los fundamentos que exponemos a continuación, *confirmamos* el dictamen apelado.

### -I-

El presente caso tiene su génesis el 29 de abril de 2025, cuando la parte apelada presentó ante el TPI una *Solicitud de*

---

[1] Entrada 29 SUMAC. Notificada el 13 de junio de 2025.

*Interdicto Posesorio* en contra de la parte apelante.[2] En esencia, sostuvo que es dueña de Joyuda Beach Front, un restaurante ubicado en un local comercial perteneciente a la parte apelante en Cabo Rojo, Puerto Rico. Indicó que el 10 de abril de 2023, suscribió un contrato de arrendamiento con la parte apelante sobre el referido local por un término de cinco (5) años para operar allí el restaurante. Arguyó que se encontraba en posesión del inmueble durante el año anterior a la presentación del recurso y que, el 27 de enero de 2025, fue despojada de ésta por la parte apelante. Específicamente, esgrimió que el señor Torres Castillo colocó una cadena en el inmueble que le impidió la entrada al mismo. En adición, incoó que la parte apelante le cursó una carta sobre incumplimiento de contrato.

El 1 de mayo de 2025, presentó una *Moci[ó]n Enmendando Demanda.*[3] Expuso que advino en conocimiento de que la parte apelante pudo haber alquilado el local por lo que procedía enmendar la demanda a los fines de incluir a las personas desconocidas John Doe y Desconocida ABC quienes podían tener interés en el pleito. Cónsono con lo anterior, el 4 de mayo de 2025, presentó una *Solicitud de Interdicto Posesorio Enmendado.*[4]

El 14 de mayo de 2025, la parte apelante presentó una *Moci[ó]n en Oposici[ó]n a Solicitud de Interdicto Posesorio.*[5] Esencialmente, reconoció haber arrendado, mediante contrato de arrendamiento suscrito el 10 de abril de 2023, y sostuvo que, para el 24 de enero de 2025, la parte apelada adeudaba $12,647.39. Además, que el Sr. Juan Lugo Nieves (en adelante, señor Lugo Nieves), hijo de la señora Nieves Lamoso y quien fungía como administrador del restaurante, efectuó dos (2) pagos que redujeron

---

[2] Entrada 1 SUMAC.
[3] Entrada 10 SUMAC.
[4] Entrada 12 SUMAC.
[5] Entrada 22 SUMAC.

el balance adeudado a la suma de $11,677.39. También, esgrimió que, el 27 de enero de 2025, el señor Lugo Nieves removió mobiliario y otras pertenencias del restaurante, le manifestó al señor Torres Castillo que el negocio no continuaría operando y voluntariamente le entregó a éste las llaves del local. Asimismo, que el 1 de febrero de 2025, el señor Lugo Nieves le envió a la parte apelante un documento intitulado "Inventario de Equipo Mobiliario Restaurante Joyuda Beach" en donde, según sostuvo la parte apelante, éste reconoció la deuda y le expuso que la administración del restaurante se encontraba a la espera de un nuevo arrendador, a quien se le interesaba vender un equipo. Finalmente, arguyó que no procedía la expedición del interdicto posesorio toda vez que la entrega voluntaria de las llaves del inmueble y el acto de remoción del mobiliario implicaron que la parte apelada deseaba liberar la propiedad sin necesidad de un proceso judicial, y que en la demanda no se alegaron hechos específicos que demostraran la perturbación de la posesión del inmueble.

Así las cosas, el 15 de mayo de 2025, se celebró la Vista sobre Interdicto Posesorio en el TPI. Según surge de la *Minuta*,[6] la parte apelada, a través de su representación legal, expuso que poseía la citación diligenciada del Sr. Luis Oscar Muñiz Avilés (en adelante, señor Muñoz Avilés), quien adquirió el local. Ya que el señor Avilés no compareció a la vista, la señora Nieves Lamoso solicitó que el foro *a quo* anotara su rebeldía. Sin embargo, el foro apelado hizo constar que en el récord aparecía John Doe y no la persona a quien se hacía referencia, por lo que no podía realizar ninguna determinación en cuanto a ésta.

En el juicio, testificaron la señora Nieves Lamoso, el señor Lugo Nieves, la señora Blanco Cornejo y el señor Torres Castillo; en

---

[6] Entrada 25 SUMAC.

adición, se admitieron en evidencia el contrato de arrendamiento y el documento "Inventario de Equipo Mobiliario Restaurante Joyuda Beach."

El 9 de junio de 2025, el foro primario dictó *Sentencia.*[7] A través del referido dictamen, el TPI hizo las siguientes determinaciones de hechos:

1. La parte demandante, es Carmen Milagros Nieves Lamoso[.][8]

2. La parte demandada es Alberto Torres Castillo[.][9]

3. La demandante es dueña de un restaurante conocido como Joyuda Beach Front, ubicado en la carretera PR 102 km. 10.8 [sic], Sector Punta Arenas, Cabo Rojo, Puerto Rico.

4. Es un [l]ocal [c]omercial perteneciente a la parte demandada, en el segundo nivel, junto con el arriendo se incluye un cuarto almacén, en el primer nivel según consta de un contrato de arrendamiento [sic].

5. Las partes, demandante y demandado, otorgaron un contrato de arrendamiento sobre el inmueble ubicado en la carretera PR 102 km. 10.8 [sic], Sector Punta Arenas, Cabo Rojo, Puerto Rico[,] el 10 de abril de 2023[,] por el término de cinco años.

6. La parte demandante declaró que se encontraba en posesión del mismo el año anterior a la radicación de la presente demanda.

7. La demandante declaró que su hijo, Juan Lugo Nieves, es el administrador del restaurante Joyuda Beach Front desde que comenzó a operar en el año 2023.

8. La demandante declaró que el último día que oper[ó] su negocio fue el 26 de enero de 2025.

9. La demandante declaró que[,] el 27 de enero de 2025[,] su hijo Juan Lugo Nieves le indicó que colocaron una cadena en la entrada principal del negocio.

10. La demandante declaró que adeuda tres meses de renta al arrendador.

---

[7] Entrada 29 SUMAC. Notificada el 13 de junio de 2025.

[8] Se omite parte de esta determinación de hecho por cuanto incluye datos e información personales de la parte apelada que no son pertinentes a la disposición del presente recurso.

[9] Igualmente, se omite parte de esta determinación de hecho por cuanto incluye datos e información personales del señor Torres Castillo que no son pertinentes a la disposición del presente recurso.

11. La demandante declaró que Alberto Torres Castillo nunca le comunicó su intención de cerrar el negocio.

12. La demandante declaró acudió [sic] al negocio y estaba colocada la cadena que evitaba el acceso al negocio.

13. La demandante declaró que desde que se coloc[ó] la cadena en el negocio[,] no ha vuelto a tener acceso ni entrada.

14. El Sr. Juan Lugo Nieves es testigo de la parte demandante, al no ser utilizado por la demandante, el demandado lo utilizó como su testigo.

15. El Sr. Juan Lugo Nieves atestigu[ó] ser hijo de la Sra. Nieves Lamoso.

16. El Sr. Lugo Nieves declaró que es el administrador de los negocios de la Sra. Nieves Lamoso.

17. El Sr. Juan Lugo Nieves declaró que realiza los pagos de arrendamiento al Sr. Torres Castillo.

18. El Sr. Juan Lugo Nieves que [sic] el 27 de enero de 2025 tenía colocada una cadena en la entrada principal del negocio.

19. El Sr. Juan Lugo Nieves que [sic] no ha entrado o ha tenido acceso al negocio desde el 27 de enero de 2025.

20. El Sr. Juan Lugo Nieves que [sic] no ha entregado las llaves del local ya que existe mercancía y existe un contrato válido.

21. El Sr. Juan Lugo Nieves que [sic] antes de ser cerrado el negocio[,] movió o traslad[ó] mercancía a otro negocio que le pertenece a su madre.

22. El Sr. Juan Lugo Nieves declaró que no ha entrado al negocio por la situación entre las partes y que el Sr. Torres Castillo impidió la entrada.

23. El Sr. Juan Lugo Nieves que [sic] que el Sr. Torres Castillo mediante llamada telefónica le indicó que estaba cerrado el negocio y que no podía entrar.

24. La Sra. Kety Blanco Correjo [sic] testificó conocer a la demandante y a Juan Lugo Nieves.

25. La Sra. Kety Blanco Correjo [sic] testificó que el negocio oper[ó] hasta el 27 de enero de 2025.

26. La Sra. Blanco Correjo [sic] declaró que el Sr. Lugo Nieves recogió varias pertenencias en una guagua blanca acompañado de varias personas que no conoce.

27. La Sra. Blanco Correjo [sic] declaró que el Sr. Lugo Nieves le indicó que no podía con los gastos del negocio.

28. La Sra. Blanco Correjo [sic] declaró que al momento de recoger algunas pertenencias se encontraba[n] unos primos y hermano del demandado.

29. La Sra. Blanco Correjo [sic] declaró que el Sr. Lugo Nieves le entregó $500.00.

30. La Sra. Blanco Correjo [sic] declaró que el Sr. Lugo Nieves le entregó las llaves del negocio.

31. La Sra. Blanco Correjo [sic] declaró que nunca ha tenido comunicación con la Sra. Carmen M. Nieves Lamoso.

32. La Sra. Blanco Correjo [sic] declaró que nunca ha impedido la entrada a la demandante al negocio; que el negocio siempre estuvo abierto y siempre tiene una cadena por seguridad por que [sic] se coloca cuando se van de viaje.

33. El Sr. Alberto Torres Castillo declaró ser dueño del inmueble donde ubica el restaurante Joyuda Beach Front.

34. El Sr. Torres Castillo declaró que el 27 de enero de 2025 que [sic] el Sr. Lugo Nieves le indicó que no estaba vendiendo el negocio y le entregó las llaves.

35. El Sr. Torres Castillo declaró que el Sr. Lugo Nieves movió propiedad del negocio.

36. El Sr. Torres Castillo declaró que nadie le impide al demandante a que vayan al negocio.

37. El Sr. Torres Castillo declaró que la Sra. Nieves Lamoso no le ha entregado las llaves del negocio.

38. El Sr. Torres Castillo declaró que no tiene objeción que continuará con el restaurante la demandante [sic].

39. El Sr. Torres Castillo declaró que tiene un contrato de arrendamiento vigente con la Sra. Nieves Lamoso.

40. El Sr. Torres Castillo declaró que la propiedad tiene un cable en la entrada principal pero no tiene candado.

41. El Sr. Torres Castillo declaró que está en posesión del restaurante actualmente.

42. Las partes otorgaron un contrato de arrendamiento el 10 de abril de 2023 por el t[é]rmino de 5 años, estando vigente.

43. El demandado ha retenido los muebles y pertenencias del demandante ilegalmente y no le ha permitido tener acceso a los mismos, incluyendo el sistema alquilado que utiliza para cobrar con tarjetas de crédito.

44. La demandante ha sufrido el menoscabo del derecho de uso y disfrute y posesión de la propiedad rentada, ya que el demandado le ha desprovisto ilegalmente del inmueble que tiene arrendado.

Inconforme con ella, el 26 de junio de 2025, la parte apelante presentó una *Moci[ó]n de Reconsideraci[ó]n.*[10] Allí, resaltó que la demanda en el presente caso se enmendó a los fines de incluir a posibles partes indispensables y que, en la vista en su fondo, se hizo referencia al señor Muñiz Avilés como una parte indispensable, quien no compareció. Asimismo, cuestionó que en las determinaciones de hechos de la *Sentencia* no surgiera que se admitió en evidencia del documento "Inventario de Equipo Mobiliario Restaurante Joyuda Beach Front", en el que se reconoce la deuda y que se esperaba por un nuevo arrendador que ocupara el local y comprara el equipo.

Similarmente, señaló que, aunque se admitió en evidencia el contrato de arrendamiento, no se acompañó el inventario del equipo que había en el local al momento del otorgamiento y el cual era parte del contrato. Indicó que no se controvirtió el testimonio en cuanto a que el señor Lugo Nieves removió mobiliario del local y le manifestó al señor Torres Castillo que no seguiría operando el restaurante, por lo que hizo entrega voluntaria de las llaves. Adujo, además, que de la prueba presentada no surgió que se hiciera algún reclamo por falta de pago o incumplimiento de contrato que pudiera interpretarse como un desahucio ilegal. Finalmente, arguyó que no procedía la concesión de un interdicto posesorio por falta de parte indispensable o porque el promovente del recurso entregó voluntariamente la propiedad, lo cual debía interpretarse como que la parte apelante podía arrendar el local a otra persona.

---

[10] Entrada 35 SUMAC.

Ante ello, el 27 de junio de 2025, el TPI emitió una *Resolución [de] Reconsideración* en la que declaró *No Ha Lugar* la solicitud de reconsideración de la parte apelante.[11]

Inconforme aun, la parte apelante acude ante nos mediante el presente recurso de *Apelación* y señala al foro primario por la comisión de los siguientes errores:

> **A: ALEGA LA PARTE APELANTE QUE ERR[Ó] EL TRIBUNAL DE INSTANCIA AL NO DESESTIMAR LA DEMANDA ENMENDADA A PESAR DE QUE LA PARTE APELADA MANIFEST[Ó] QUE SE CIT[Ó] A LUIS OSCAR MUÑIZ AVIL[É]S POR SER UNA PARTE INDISPENSABLE YA QUE POD[Í]A TENER ALG[Ú]N INTER[É]S EN EL LOCAL ARRENDADO.**

> **B: ERR[Ó] EL TRIBUNAL AL DECLARAR CON LUGAR EL INTERDICTO POSESORIO CUANDO NO SE PRESENT[Ó] PRUEBA QUE DEMOSTRARA QUE LOS APELANTES PERTURBARAN EN LA POSESI[Ó]N O TENENCIA DE LA PROPIEDAD A LA APELADA POR ACTOS QUE MANIFIESTAN LA INTENCI[Ó]N DE INQUIETARLE O DESPOJARLE.**

Por su parte, el 28 de julio de 2025, la señora Nieves Lamoso compareció mediante un escrito titulado *Alegato de la Apelada.* Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del presente asunto, no sin antes exponer las normas jurídicas aplicables.

## *-II-*

### *-A-*

El requisito de acumular una parte indispensable es una exigencia del debido proceso de ley. *Pérez Ríos et al. v. CPE,* 213 DPR 203, 212 (2023). Este requisito responde a dos (2) principios básicos: (1) la protección constitucional que impide que una persona sea privada de su libertad y propiedad sin un debido proceso de ley, y (2) la necesidad de que el dictamen judicial que en su día se emita sea uno completo. *Íd.*; *RPR & BJJ, Ex parte,* 207 DPR 389, 407 (2021); *Cepeda Torres v. García Ortiz,* 132 DPR 698, 704 (1993). La parte indispensable es "aquella de la cual no se puede prescindir y

---

[11] Entrada 37 SUMAC. Notificada el 30 de junio de 2025.

cuyo interés en la cuestión es de tal magnitud, que no puede dictarse un decreto final entre las partes sin lesionar y afectar radicalmente sus derechos." *Pérez Ríos et al. v. CPE, supra*, pág. 213; *FCPR v. ELA et al.,* 211 DPR 521, 531 (2023); *Cirino González v. Adm. de Corrección et al.,* 190 DPR 14, 46 (2014); *Deliz et als. v. Igartúa et als.,* 158 DPR 403, 432 (2003); *Sánchez v. Sánchez,* 154 DPR 645, 678 (2001).

El interés común en la Regla 16.1 de Procedimiento Civil no "trata de un mero interés en la controversia, sino de aquel de tal orden que impida la confección de un decreto adecuado sin afectarlo." *Pérez Ríos et al. v. CPE, supra,* pág. 213 (citando a *Deliz et als. v. Igartúa et als., supra,* pág. 433). El interés común es un interés real e inmediato, no especulativo ni futuro, que impida un remedio adecuado porque podría afectar o destruir radicalmente los derechos de la parte ausente. *Pérez Ríos et al. v. CPE, supra,* pág. 213 (citando a *RPR & BJJ, Ex parte, supra,* pág. 408).

La falta de parte indispensable es tan vital que el asunto pueda levantarse en cualquier momento, inclusive por primera vez en apelación, o *motu proprio* por el tribunal. *Pérez Ríos et al. v. CPE, supra,* pág. 213; *RPR & BJJ, Ex parte, supra,* pág. 407; *García Colón et al. v. Sucn. González,* 178 DPR 527, 550 (2010); *Romero v. SLG Reyes,* 164 DPR 721, 733 (2005). En fin, una sentencia, ausente una parte indispensable, adolece de nulidad. *Pérez Ríos et al. v. CPE, supra,* pág. 214; *FCPR v. ELA et al., supra,* pág. 532; *Unisys v. Ramallo Brothers,* 128 DPR 842, 859 (1991).

### -B-

Es preciso resaltar que el Código Civil de Puerto Rico (en adelante, "Código Civil") define la posesión como "la tenencia de una cosa o el disfrute de un derecho por una persona." Artículo 703 del Código Civil, 31 LPRA sec. 7821. Asimismo, la referida pieza legislativa expone que la posesión de un bien puede tenerse por dos

(2) conceptos: "(a) en el de dueño; o **(b) en el de tenedor, para conservarlos o disfrutarlos, perteneciendo el dominio a otra persona**." Artículo 707 del Código Civil, 31 LPRA sec. 7825 (énfasis nuestro).

Siendo ello así, el Código Civil provee para quien sea privado de la posesión de una cosa o un derecho. Específicamente, en el Artículo 724 dispone que "[t]odo poseedor tiene derecho a ser respetado en su posesión; si es inquietado en ella indebidamente, debe ser amparado o restituido en dicha posesión por los medios que la ley procesal establece." 31 LPRA sec. 7862. Lo anterior "autoriza la intervención del aparato judicial para tutelar la posesión como hecho de todo poseedor." *Miranda Cruz y otros v. SLG Ritch*, 176 DPR 951, 960 (2009). Sobre lo anterior, nuestro Más Alto Foro judicial ha expuesto que "[n]o es determinante si la posesión está o no justificada, sino más bien que haya una existencia de posesión de hecho que, en determinado momento, esté expuesta a perderse, o ya se haya perdido." *Íd.*

Cónsono con lo anterior, el Código de Enjuiciamiento Civil establece el interdicto o *injunction* posesorio como mecanismo para amparar al poseedor perturbado en su posesión. Específicamente, el Artículo 690 del antedicho código dispone que:

> Se concederá un *injunction* para retener o recobrar la posesión material de propiedad inmueble, a instancia de parte interesada, siempre que ésta demuestre, a satisfacción del tribunal, que ha sido perturbada en la posesión o tenencia de dicha propiedad por actos que manifiesten la intención de inquietarle o despojarle, o cuando haya sido ya despojada de dicha posesión o tenencia.
>
> 32 LPRA sec. 3561; *Miranda Cruz y otros v. SLG Ritch*, *supra*, pág. 961.

Para vencer en dicha acción, el Código de Enjuiciamiento Civil le impone al poseedor promovente que su demanda jurada haga constar lo siguiente:

> (1) Que el demandante, dentro del año precedente de la presentación de la demanda, estaba en la posesión real

> de la propiedad que en dicha demanda se describe, si se trata de recobrarla, y estaba y está, si de retenerla.
>
> (2) Que ha sido perturbado o despojado de dicha posesión o tenencia.
>
> Artículo 691 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3562.

En adición, la demanda tiene que "describir claramente los hechos constitutivos de la perturbación o despojo, así como si dichos actos fueron realizados por el demandado o por otra persona por orden de éste." *Íd.*

Como es sabido, el propósito fundamental del interdicto posesorio es brindar una protección rápida y eficaz a quienes son perturbados o despojados de su posesión pacífica mediante el acto de otra persona. *Miranda Cruz v. SLG Ritch, supra,* pág. 968 (citando a *Ramos v. Puig,* 61 DPR 83, 85 (1942)). Más aun, este recurso interdictal busca evitar que las personas tomen la justicia en sus propias manos. *Íd.*

Siendo así, el remedio del *injunction* posesorio constituye en que el tribunal "ordenará que el demandante sea restablecido en la posesión y requerirá al perturbador para que en lo sucesivo se abstenga de cometer tales actos u otros que manifiesten el mismo propósito, bajo apercibimiento de desacato al tribunal por desobediencia al predicho *injunction.*" Artículo 695 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3566.

Cabe destacar que el poseedor puede incoar este remedio interdictal inclusiva contra el propio dueño de la propiedad. *Miranda Cruz v. SLG Ritch, supra,* págs. 968-969; *Navedo v. Amato,* 70 DPR 673, 677 (1949). De igual manera, es meritorio resaltar que los casos sobre interdicto posesorio son acciones de naturaleza sumaria y extraordinaria, **con el único propósito de dilucidar la posesión de hecho del inmueble y no el derecho a la posesión**. *Miranda Cruz v. SLG Ritch, supra,* pág. 967; *Disdier Pacheco v. García,* 101 DPR

541, 547 (1973). Siendo así, a pesar de la resolución del asunto sobre la posesión de hecho, se mantiene a salvo el derecho de las partes y de otros a quienes pueda competer para litigar, por la vía ordinaria, el derecho titular sobre el inmueble y cualesquiera otros extremos que fueren procedentes. *Miranda Cruz v. SLG Ritch, supra,* pág. 967; *Disdier Pacheco v. García, supra,* pág. 551. Por lo tanto, las sentencias que concedan *injunctions* posesorios no constituyen cosa juzgada, pues no tiene el efecto de adjudicar la titularidad del inmueble objeto del pleito. *Miranda Cruz v. SLG Ritch, supra,* págs. 967-968.

### -C-

Los tribunales apelativos no debemos intervenir con la apreciación de la prueba que realiza el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 338 (2021); *Santiago Oriz v. Real Legacy et al.,* 206 DPR 194, 219 (2021); *Gómez v. Márquez et al. v. El Oriental,* 203 DPR 783, 793 (2020); *SLG Torres-Matundan v. Centro Patología,* 193 DPR 920, 933 (2015). Ello por cuanto "la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz." *Ortiz Ortiz v. Medtronic, supra,* págs. 778-779 (citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013)); *Gómez v. Márquez et al. v. El Oriental, supra,* págs. 792-793. Esta deferencia judicial responde a que "los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo." *Ortiz Ortiz v. Medtronic, supra,* pág. 779

(citando a *Santiago Oriz v. Real Legacy et al., supra,* pág. 219); *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 142 (2013).

Nuestro Máximo Foro judicial ha expresado que incurre en pasión, prejuicio o parcialidad el juzgador que actuó por inclinaciones personales de tal intensidad que adoptó posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala o incluso antes de que se someta prueba alguna ante su consideración. *Ortiz Ortiz v. Medtronic, supra,* pág. 779 (citando a *Dávila Nieves v. Meléndez Marín, supra,* pág. 782).

Es, por lo tanto, que, ante una alegación de pasión, prejuicio o parcialidad, los foros apelativos debemos revisar, primeramente, si el juez o jueza de instancia cumplió su función de adjudicar imparcialmente, pues solo así podrá descansar en sus determinaciones de hechos. *Gómez v. Márquez et al. v. El Oriental, supra,* pág. 793; *Dávila Nieves v. Meléndez Marín, supra,* pág. 777.

Por otro lado, ocurre el error manifiesto cuando el foro apelativo queda convencido de que se cometió el error a pesar de que haya evidencia que sostenga las conclusiones de hecho del tribunal, porque existe un conflicto entre las conclusiones y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. *Ortiz Ortiz v. Medtronic, supra,* pág. 779; *Gómez v. Márquez et al. v. El Oriental, supra,* pág. 793; *Dávila Nieves v. Meléndez Marín, supra,* pág. 772; *Méndez v. Morales,* 142 DPR 26, 36 (1996).

Asimismo, se incurre en un error manifiesto "cuando 'la apreciación de [la] prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble.'" *Ortiz Ortiz v. Medtronic, supra,* pág. 779 (citando a *Pueblo v. Toro Irizarry,* 200 DPR 834, 859 (2018) (énfasis y negrillas suprimidas)); *Gómez v. Márquez et al. v. El Oriental, supra,* pág. 793. Ello se manifiesta con particularidad

cuando el tribunal descansa exclusivamente en una parte de la prueba, mientras hubo otra prueba que la contradijo. *Gómez v. Márquez et al. v. El Oriental, supra,* pág. 793; *Méndez v. Morales, supra,* pág. 37.

Por consiguiente, la facultad de los foros judiciales apelativos para sustituir el criterio de los foros judiciales de instancia está restringida a los escenarios en que, de la prueba admitida, no exista base suficiente que apoye su determinación. *Ortiz Ortiz v. Medtronic, supra,* pág. 779; *Gómez v. Márquez et al. v. El Oriental, supra,* pág. 794. Claro está, las diferencias en el criterio jurídico no alcanzan el referido estándar de revisión. *Ortiz Ortiz v. Medtronic, supra*, pág. 780; *Gómez v. Márquez et al. v. El Oriental, supra,* pág. 794.

Ciertamente, lo anterior no aplica a las determinaciones o apreciación basadas exclusivamente en prueba documental o pericial toda vez que los tribunales apelativos se encuentran en idéntica posición que los tribunales de instancia. *Díaz García v. Aponte,* 125 DPR 1, 13-14 (1989).

Expuesto este marco jurídico, y estando en posición de así hacerlo, precedemos a resolver el recurso presentado.

### *-III-*

En el presente caso, la parte apelante señala dos (2) errores que, por estar íntimamente relacionados entre sí, procederemos a discutir en conjunto. Específicamente, esgrime que el foro primario erró al conceder el recurso interdictal posesorio a favor de la parte apelada por dos (2) razones: falta de una parte indispensable e insuficiencia en la prueba presentada para sostener la procedencia del *injunction* posesorio. *No le asiste la razón.*

En primer lugar, la parte apelante plantea que, si el señor Muñiz Avilés es una persona con algún interés en la propiedad, sería una parte indispensable que debía ser parte en el pleito para que, en caso de que se concediera el interdicto posesorio a favor de la

parte apelada, ésta le respondiera. Por lo que su ausencia, impide la concesión del *injunction* posesorio.

No obstante, el presente asunto versa sobre una acción extraordinaria con la finalidad exclusiva de determinar el hecho de la posesión del local. El interés y el derecho, si algunos, que pudieran tener otras personas distintas a las partes de epígrafe, como los podría tener el señor Muñiz Avilés, no son asuntos adecuados para atenderse en el presente caso. *Miranda Cruz v. SLG Ritch, supra*, pág. 967; *Disdier Pacheco v. García, supra,* pág. 547. Ello correspondería a dilucidarse en el pleito civil ordinario provisto para determinar los derechos posesorios. Como vimos, toda vez que el único fin del recurso de *injunction* posesorio es dilucidar y proteger la posesión de hecho mas no el derecho a ésta, la adjudicación de dicho remedio interdictal no lacera la facultad de quienes aleguen sostener un derecho propietario o titular sobre el mismo inmueble objeto del interdicto. *Miranda Cruz v. SLG Ritch, supra,* pág. 967; *Disdier Pacheco v. García, supra,* págs. 547 y 551. Siendo así, el señor Muñiz Avilés no constituye una parte indispensable sin la que se podía disponer del recurso de *injunction* posesorio.

Consecuentemente, no erró el TPI al no desestimar la causa de acción por falta de parte indispensable.

Asimismo, la parte apelante cuestiona la apreciación y suficiencia que el foro *a quo* le mereció a la prueba presentada para sostener la procedencia del *injunction* posesorio.

Primeramente, surge del expediente que la prueba documental que fue admitida consistió en el contrato de arrendamiento suscrito entre las partes y el documento titulado "Inventario de Equipo Mobiliario Restaurante Joyuda Beach." Como es sabido, la deferencia judicial que el foro apelativo le merece al foro primario no aplica a las determinaciones o apreciación basadas en prueba documental toda vez que, ante ésta, los tribunales apelativos

se encuentran en idéntica posición que los tribunales de instancia. *Díaz García v. Aponte, supra*, págs. 13-14.

La parte apelante sostiene que el documento "Inventario de Equipo Mobiliario Restaurante Joyuda Beach" demuestra el abandono del local por parte de la señora Nieves Lamoso toda vez que en el referido documento se hizo constar la espera de un nuevo arrendador interesado en la propiedad y en el equipo contenido en ésta. Entendemos que el contenido de dicho documento no supone un abandono que la parte apelada de la posesión de hecho del inmueble, el factor pertinente en un caso de interdicto posesorio.

Precisamente, la intención de la señora Nieves Lamoso de, en su momento, sea de resolver o mantener la relación jurídica por virtud del contrato de arrendamiento entre ésta y la propiedad, no significa que ello interrumpió voluntariamente la posesión de hecho, por lo que no es pertinente al caso de autos.

La Sentencia objeto de la Apelación, como todas las demás, está acompañada de una presunción de corrección y validez. *López García v. López García*, 200 DPR 50, 59 (2018); Véase, además, *Nieves Díaz v. González Massas*, 178 DPR 820 (2010); *Cfr. Vargas v. González*, 149 DPR 859, 866 (1999). Corresponde a la parte apelante ponernos en posición de apartarnos de la deferencia que otorgamos a los dictámenes del hermano Foro, quien estuvo en mejor posición para aquilatar la prueba testifical. En lo pertinente, la Regla 42.2 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.42.2, dispone que: "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". Por eso, la parte apelante no puede descansar meramente en sus alegaciones. Véase, entre otros, *Pereira Suárez v. Junta de Directores*, 182 DPR 485 (2011); *Asoc. Auténtica Empl. v. Municipio de Bayamón*, 111 DPR 527,

531 (1981). Por el contrario, tiene el peso de rebatir la presunción de corrección que gozan las actuaciones de los tribunales de instancia. *Pueblo v. Prieto Maysonet*, 103 DPR 102, 107 (1974). Por ello, los foros apelativos no intervenimos con la apreciación de la prueba efectuada por el juzgador de los hechos, en ausencia de pasión, prejuicio, parcialidad o error manifiesto de parte del foro primario. *Ortiz Ortiz v. Medtronic, supra,* pág. 778; *SLG Fernández-Bernal v. RAD-MAN et al., supra,* pág. 338; *Santiago Ortiz v. Real Legacy et al., supra,* pág. 219; *Gómez v. Márquez et al. v. El Oriental, supra,* pág. 793; *SLG Torres-Matundan v. Centro Patología, supra,* pág. 933.

En primer lugar, la señora Nieves Lamoso declaró que se encontraba en posesión del local que le fue arrendado durante el año anterior a la presentación de la demanda. Seguidamente, que operó el 27 de enero de 2025, su hijo, el señor Lugo Nieves, le indicó que fue colocada una cadena en la entrada principal del negocio, dato que corroboró, y que, por razón de ello, no ha vuelto a tener acceso ni entrada al inmueble.

Por otro lado, el señor Lugo Nieves declaró que, para el 27 de enero de 2025, el local tenía una cadena que impedía acceso al mismo. Además, que no entregó las llaves del inmueble a los dueños de éste y que el señor Torres Castillo le impidió la entrada.

No obstante, la señora Blanco Cornejo declaró que, contrario a lo atestiguado por el señor Lugo Nieves, éste sí le entregó las llaves del negocio. Asimismo, que el restaurante siempre estuvo abierto y tenía una cadena por motivos de seguridad.

Finalmente, el señor Torres Castillo declaró, igualmente, que el señor Lugo Nieves le entregó las llaves del local. Sin embargo, señaló que la señora Nieves Lamoso no le ha entregado las llaves del negocio. Adicionalmente, atestiguó que la propiedad tiene un cable

en la entrada, pero no está asegurado con candado. Más aún, admitió que está actualmente en posesión del restaurante.

Nótese que los elementos sustantivos exigidos por el Código de Enjuiciamiento Civil para la concesión de un *injunction* posesorio se encuentran presentes. Específicamente, la parte apelada, a satisfacción del TPI, probó: **(1)** haber estado en posesión del local durante el año anterior a la demanda; **(2)** que fue perturbada en su posesión; **(3)** por los actos del demandado, el señor Torres Castillo; y, **(4)** describió claramente los actos constitutivos de la perturbación al especificar que se colocó una cadena a la entrada del local que le impedía el acceso al inmueble. De esa forma, quedó sostenida la procedencia del interdicto posesorio al satisfacerse los elementos establecidos en el Artículo 691 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3562.

En el caso de autos, el TPI aquilató el valor probatorio y adjudicó la credibilidad de la prueba, y, tras un análisis sosegado, no estamos ante circunstancias que apunten a pasión, prejuicio o parcialidad, o error manifiesto en dicha justipreciación.

Consecuentemente, es forzoso concluir que no erró el foro *a quo* al apreciar la prueba presentada y conceder el *injunction* posesorio.

### -*IV*-

Por los fundamentos que anteceden, los cuales hacemos formar parte, *confirmamos* la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones